# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RYAN D. HOBBS,

                    Plaintiff,            :        Case No. 1:17-cv-441


                                                  District Judge Michael R. Barrett
          -  vs  -                                Magistrate Judge Michael R. Merz

DEREK FAULKNER, et al.,


                    Defendants.           :

---

# REPORT AND RECOMMENDATIONS

---

This is an action brought *pro se* by Plaintiff Ryan Hobbs under 42 U.S.C. § 1983.  The case is before the Court on several Motions to Dismiss (ECF Nos. 19, 25, and 26).  Plaintiff has filed Responses in Opposition (ECF Nos. 24, 28, and 29) and the moving parties have filed Replies in support (ECF Nos. 27, 33, and 38).

Motions to dismiss a case involuntarily are "dispositive" motions on which an assigned Magistrate Judge is required to file a recommended disposition rather than a decision.  Fed. R. Civ. P. 72(b).  The Magistrate Judge reference in this case has recently been transferred to the undersigned to promote coordination with Hobbs's habeas corpus litigation, *Hobbs v. Ohio Adult Parole Authority*, Case No. 1:13-cv-928, which is assigned to District Judge Black but also referred to the undersigned.

1

The operative pleading to which the motions to dismiss are directed is the Amended Complaint filed May 14, 2018 (ECF No. 14).

Plaintiff claims this Court has jurisdiction under Article III, § 2 of the United States Constitution which he says "extends the jurisdiction to cases arising under the U.S. Constitution." *Id.* at PageID 231.  Actually, Article III does not by itself confer jurisdiction, but Congress has granted subject matter jurisdiction to United States District Courts for claims arising under the Constitution,  28 U.S.C. § 1331.  Because this case purports to arise under 42 U.S.C. § 1983, the Court has subject matter jurisdiction.  Venue is proper in this Court because all of the alleged constitutional deprivations occurred in this judicial district.  28 U.S.C. § 1391.

In the Amended Complaint Plaintiff names as Defendants:

1. Derek Faulkner and Mel Planas in their official capacities as Assistant County Prosecutors of Warren County, Ohio (hereinafter "Prosecutor Defendants") (ECF No. 14, PageID 231, ¶ 6).

2. Jeff Burson, Paul Lindenschmidt, and Michael O'Downey in their official capacities as police officers of the City of Mason, Ohio (collectively, the "Mason Defendants").  *Id.* at PageID 232, ¶ 7.

3. Mike Bunner and Don Stebastenelli in their official capacities as Director and former Director of Warren County Emergency Services (hereinafter "Telecom Defendants," shorthand employed both by these Defendants and by Plaintiff).  *Id.* at PageID 232, ¶ 8.

4. Ron Ruppert, an attorney sued in his official capacity which is not described.  *Id.* at PageID 232, ¶ 9.

5. Timothy Tepe, sued in his official capacity as a Judge of the Warren County Court of Common Pleas.  *Id.* at PageID 232, ¶ 10.

Plaintiff originally sought monetary damages in the total amount of five million dollars (Verified Complaint, ECF No. 3, PageID 31-32).  However, the Amended Complaint seeks only injunctive relief (ECF No. 14, PageID 246-47).

As part of their Motion to Dismiss, the Prosecutor and Telecom Defendants move to strike the Amended Complaint on the grounds it was improperly filed while a Report and Recommendations from Magistrate Judge Bowman on initial screening under 28 U.S.C. § 1915 was still pending (ECF No. 26, PageID 310-311). Magistrate Judge Bowman's subsequent Order (ECF No. 32) accepting the Amended Complaint as filed renders this motion to strike moot.

## Standard of Review

All Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6). The Prosecutor and Telecom Defendants and Judge Tepe also seek dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## Jurisdiction (Fed. R. Civ. P. 12(b)(1)

Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases which are within the judicial power of the United States as defined in the United States Constitution and as further granted to them by Act of Congress. *Finley v. United States*, 490 U.S. 545, 550 (1989); *Aldinger v. Howard*, 427 U.S. 1, 15 (1976). Therefore, there is a presumption that a federal court lacks jurisdiction until it has been demonstrated. *Turner v. President, Directors and Co. of the Bank of North America,* 4 U.S. 8 (1799). Facts supporting subject matter jurisdiction must be affirmatively pleaded by the person seeking to show it. *Bingham v. Cabot,* 3 U.S. 382 (1798). The burden of proof is on the party asserting jurisdiction if it is challenged. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1935); *Thomson v. Gaskill*, 315 U.S.

3

442 (1942); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir. 1990); 5A Wright and Miller, *Federal Practice and Procedure, Civil 2d* §1350 (1990). A federal court is further obliged to note lack of subject matter jurisdiction *sua sponte. Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908); *Capron v. Van Noorden*, 6 U.S. 126 (1804); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.,* 556 F.3d 459, 465 (6th Cir. 2009); *Clark v. United States*, 764 F. 3d 653 (6th Cir. 2014).

A facial attack on a complaint is proper under rule 12(b)(1) and requires the Court to assume the truth of all allegations made by a plaintiff that are relevant to the jurisdictional issue. *DLX, Inc., v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), *citing RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); and *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). If an issue of sovereign immunity is involved, a plaintiff must identify a waiver of sovereign immunity in order to proceed. *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000), *citing Dalehite v. United States*, 346 U.S. 15, 30 (1953).

**Pleading a Claim for Relief (Fed. R. Civ. P. 12(b)(6))**

"The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990); see also *Gex v. Toys "R" Us*, 2007 U.S. Dist. LEXIS 73495, *3-5 (S.D. Ohio, Oct. 2, 2007); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson Cty., Tennessee,* 814 F.2d 277, 279 (6th Cir. 1987). Stated differently, a motion to dismiss under

Fed.R.Civ.P. 12(b)(6) is designed to test only the sufficiency of the complaint. *Riverview Health Institute LLC v. Medical Mutual of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been restated by the Supreme Court as follows:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc*., 289 F.Supp.2d 986, 995 (N.D. Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558; see also *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545 (6th Cir. 2007). "To survive a motion to dismiss, a complaint must contain

5

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact,'"

*Doe v. Miami University*, 882 F.3d 579(6th Cir. 2018), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in turn quoting *Twombly*, 550 U.S. at 570.

### Background Facts

Ryan Hobbs was indicted by the Warren County grand jury on October 29, 2007, on charges of rape, abduction, and assault for offenses alleged to have occurred in August of that year. In March 2008 as the result of plea negotiations, Hobbs pleaded guilty to one count of gross sexual imposition and one count of unlawful restraint, was given a community control sentence, and did not appeal. On July 14, 2009, however, Hobbs was found to have violated the terms of his community control which was revoked and he was sentenced to twelve months' imprisonment. Again, he took no appeal.

On May 10, 2010, Hobbs filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. The trial court denied the petition and Hobbs did not appeal. On August 10, 2012, Hobbs moved to withdraw his guilty plea. After the trial court denied the motion, Hobbs appealed to the Twelfth District Court of Appeals. That court affirmed the denial of Hobbs' motion to withdraw his plea on July 15, 2013, and the Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal.

While his appeal to the Supreme Court of Ohio was pending, Hobbs filed another motion to withdraw his guilty plea. After denial, he appealed again, counsel was appointed, and the appeal remained pending as of the time the Return of Writ was filed in Plaintiff's habeas corpus case. After Hobbs filed yet another motion to withdraw his plea and a "Prosecutorial Misconduct

Motion," the trial court declared him to be in effect a vexatious litigator[1] and barred him from further filings.

Hobbs filed a Petition for Writ of Habeas Corpus in this Court on January 10, 2014, pleading three Grounds for Relief "characterized as (1) a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), (2) which made the guilty plea involuntary and unknowing, and (3) as to which counsel provided ineffective assistance of trial counsel when not obtaining the *Brady* material." *Hobbs v. Warden*, 2015 U.S. Dist. LEXIS 987 *3-4 (S.D. Ohio Jan. 6, 2015), adopted 2015 U.S. Dist. LEXIS 19402 (S.D. Ohio Feb. 17, 2015).  In denying Hobbs' claim of equitable tolling of the statute of limitations, this Court found "[t]he documentary material he relies on for all three of his Grounds for Relief is material he received from the Mason, Ohio, Police Department and Warren County Prosecutor's Office as the result of public records requests made on April 30, 2012, and May 7, 2012." *Id.* at *7-8.[2]  The Court concluded Hobbs was not entitled to equitable tolling "because he has not shown diligence before his first records request in April 2012.  That is more than four years after his guilty plea." *Id.* at *9.

After District Judge Black adopted the Magistrate Judge recommendations and dismissed the habeas case with prejudice, Hobbs took no appeal to the Sixth Circuit.  Three and one-half years after judgment, he filed a motion for relief from judgment in that case which remains pending.

---

[1] Vexatious litigator status does not apply in criminal cases, but the Warren County Court of Common Pleas has exercised its inherent authority to enjoin further filings by Hobbs in his criminal case without leave of court that is parallel to the relief which would be imposed on a vexatious litigator.
[2] Belying his claim that he did not discover the basis of his claims until June 2017.

# Analysis

**The *Heck v. Humphrey* Bar**

All Defendants except Attorney Ruppert assert Plaintiffs' claims are barred by *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994)(ECF Nos. 19, 26). Plaintiff to the contrary asserts his case comes within an exception to *Heck* recognized in *Spencer v. Kemna*, 523 U.S. 1 (1998)(ECF No. 24, PageID 281-82; No. 29, PageID 359-61.)

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). The Supreme Court decided *Heck* as it did in part to enforce its earlier decision that a district court cannot grant release from confinement in a § 1983 action because to do so would frustrate the habeas exhaustion requirements. *Preiser v. Rodriquez*, 411 U.S. 475 (1973). Hobbs does not seek release from confinement in this case, since he has already completely served his sentence, but essentially seeks declaratory and injunctive relief that would invalidate his conviction. For example, he seeks to have this Court declare that he received ineffective assistance of trial counsel in several respects, to order the production of documents which he asserts were withheld from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and to enjoin Judge Tepe from refusing (or ordering the clerk of courts to refuse) filings

he wishes to make in his "criminal case," including, presumably, further motions to withdraw his guilty plea (Amended Complaint, ECF No. 14, PageID 246-47).

*Spencer v. Kemna,* 523 U.S. 1 (1998), was a habeas corpus case where petitioner challenged an order revoking his parole; the holding of the case is that a habeas petition challenging parole revocation becomes moot when the reimposed sentence has been completely served. Spencer made a *Heck* argument which the Supreme Court majority rejected:

> Petitioner . . . contends that since our decision in *Heck* v. *Humphrey,* 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994), would foreclose him from pursuing a damages action under 42 U.S.C. § 1983 unless he can establish the invalidity of his parole revocation, his action to establish that invalidity cannot be moot. This is a great *non sequitur,* unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available.

523 U.S. at 16.  Hobbs relies on the concurring opinion of Justice Souter in which he wrote:

> The better view, then, is that a former prisoner, no longer "in custody," may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy. Thus, the answer to Spencer's argument that his habeas claim cannot be moot because *Heck* bars him from relief under § 1983 is that *Heck* has no such effect. After a prisoner's release from custody, the habeas statute and its exhaustion requirement have nothing to do with his right to any relief.

523 U.S. at 21.

Several observations are in order.  First of all, Justice Souter's concurring opinion does not state the law and no Supreme Court decision since then has adopted his position.  This Court is not free to reject the rule from the majority opinion in favor of a rule from a concurrence which has not become the law in the twenty years since *Spencer* was decided.

Second, Spencer's situation was substantially different from Hobbs's. Spencer could not litigate his constitutional claims in habeas because he had been released from custody and therefore did not have standing. Hobbs, on the other hand, has already unsuccessfully litigated his constitutional claims in habeas and lost them. Justice Souter's position was in favor of assuring one federal forum for Spencer's constitutional claims; Hobbs in the instant case is seeking a second federal forum.

Hobbs argues this is irrelevant since habeas is not presently available to him because he is no longer in custody on his conviction and only "discovered my cause of action and injury in June of 2017. . . [and] I was foreclosed habeas review which was dismissed on procedural grounds as time barred under 28 U.S.C. § 2244(d)" (ECF No. 24, PageID 282). However, in his habeas petition filed in January 2014, he already alleged a *Brady* violation in Ground One, so at least some of the facts on which he bases his Amended Complaint were known to him when he sought habeas relief. Indeed, this Court denied him equitable tolling of the statute of limitations in his habeas case because he had discovered some of the facts on which he based that case on public records request results received in April and May 2012, but had no satisfactory explanation of why he waited four years from conviction to make a public records request.

Justice Souter's concurrence in *Spencer* suggested a rule which would assure a released defendant a federal forum in which to litigate his constitutional objections to his conviction because he could not do so in habeas. Hobbs has already unsuccessfully invoked that habeas forum; through his own fault, he filed too late. Nothing in Justice Souter's concurrence, even if it were the law, would suggest a person in Hobbs' situation is entitled to a second federal forum.

As an alternative to Justice Souter's concurrence in *Spencer*, Hobbs relies on *Powers v. Hamilton County Public Defender*, 501 F.3d 592 (6th Cir. 2007). The *Powers* Court adopted

10

Justice Souter's rationale, but found it applicable only to cases where the defendant could not have received habeas review.  Powers himself was jailed for only one day; the court cited favorably *Leather v. Ten Eyck,* 180 F.3d 420 (2nd Cir. 1999), where the defendant could not pursue habeas because he had only been fined.  Here Hobbs not only could have but did pursue habeas corpus relief.  It was his own failure to act with due diligence that prevented his receiving a merits decision in that case.

Hobbs's desire to pursue this § 1983 action without meeting the *Heck* favorable-termination requirement presents exactly the unacceptable possibility of inconsistent judgments that the *Heck* Court sought to avoid.

Because Hobbs has not pleaded and cannot prove a favorable termination of his criminal case, his § 1983 claims are not cognizable and should be dismissed for failure to state a claim upon which relief can be granted.

**Defendant Ruppert Not A State Actor**

Defendant Attorney Ronald Ruppert seeks dismissal on the grounds that he is not a state actor within the meaning of § 1983.

42 U.S.C. § 1983, R.S. § 1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief

> shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299 (1986); *Carey v. Piphus,* 435 U.S. 247 (1978); *Monroe v. Pape,* 365 U.S. 167 (1961). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U.S. 158 (1992). In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S. Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Parratt v. Taylor,* 451 U.S. 527, 535 (1981); *Flagg Brothers Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The question of whether a person or entity is a state actor and whether they acted under color of state law are analytically the same question. *Georgia v. McCollum,* 505 U.S. 42, 53, n.9 (1992).

Attorney Ruppert relies on the holding of the Supreme Court in *Polk County v. Dodson,* 454 U.S. 312 (1981). Hobbs responds by citing *Powers v. Hamilton County Public Defender,* 501 F.3d 592 (6th Cir. 2007). In that case, Powers was jailed for failing to pay a fine levied by the Hamilton County Municipal Court. He sued the Public Defender Office for allegedly adopting a policy of not demanding indigency hearings in such cases. In holding that claim cognizable, the Sixth Circuit distinguished between suing an individual attorney for his or her actions as appointed defense counsel and suing a public defender office over its adoption of an unconstitutional policy.

The *Powers* Court did not question the holding in *Polk County* that an individual attorney in his or her role as defense counsel, whether retained or appointed, is not a state actor. Under *Polk County*, Attorney Ruppert is not a state actor for § 1983 purposes.

Hobbs then turns to a conspiracy theory of liability, relying on *United States v. Price*, 383 U.S. 787 (1966), and *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982). He then proceeds to list in detail the various alleged failures of Attorney Ruppert in representing him (ECF No. 28, PageID 340-46).

The Supreme Court has indeed held that a public defender is not immune on allegation of intentional conspiracy to deprive one of his federal civil rights. *Tower v. Glover*, 467 U.S. 914 (1984). However, the Amended Complaint as directed to the actions and omissions of Attorney Ruppert in the Third Cause of Action does not allege any conspiracy, but direct deprivation of constitutional rights to a jury trial and the effective assistance of counsel.

Attorney Ruppert should be dismissed as a defendant because the Amended Complaint fails to state a claim against him upon which relief can be granted.

**The *Rooker-Feldman* Bar**

The Prosecutor and Telecom Defendants and Judge Tepe assert that the Amended Complaint essentially seeks "review of the propriety of [Hobbs's] standing criminal conviction" which is barred by the *Rooker-Feldman* doctrine (Motion, ECF No. 26, PageID 312-14). Hobbs responds

> *Rooker-Feldman* does not apply to my § 1983 because state court judgments were procured by independent claims of misrepresentations and fraud/fraud upon the court, and I'm not complaining that the state court judgment itself was unconstitutional

13

> or in violation of federal law, nor am I seeking appellate review of
> the state court judgment,  See, Am. Compl. & Prayer for Relief.

(Memo Contra, ECF No. 29, PageID 352-53)

When a claim asserted in a federal proceeding is inextricably intertwined with a judgment entered in a state court, the district courts are without subject matter jurisdiction to consider the matter; it must be brought into the federal system by petition for writ of certiorari to the United States Supreme Court. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *Dist. Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983); *Peterson Novelties, Inc. v. City of Berkley,* 305 F.3d 386, 390 (6th Cir. 2002); *In re Sun Valley Foods Co.*, 801 F.2d 186 (6th Cir. 1986); *Johns v. Supreme Court of Ohio,* 753 F.2d 524 (6th Cir. 1985).

The *Rooker-Feldman* doctrine bars relitigation of claims actually raised in state-court proceedings as well as claims that are inextricably intertwined with claims asserted in those proceedings. *Catz v. Chalker,* 142 F.3d 279, 293 (6th Cir. 1998) overruled on other grounds by *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 795-96 (6th Cir. 2015).  In practice this means that when granting relief on the federal claim would imply that the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction. *Pieper v. American Arbitration Assn., Inc.*, 336 F.3d 458 (6th Cir. 2003)(Moore, J.), quoting *Catz*, 142 F.3d at 293, quoting in turn *Keene Corp. v. Cass*, 908 F.2d 293, 296 (8th Cir. 1990), and itself quoting Justice Marshall's concurring opinion in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)(stating "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.").

Hobbs's response to the *Rooker-Feldman* defense is set forth in his Memorandum Contra (ECF No. 29, PageID 361-64) under the subtitle "*Rooker-Feldman* Doctrine Does Not Apply [to]

Plaintiff's Rule 60 Motion (Doc. #6)."  Docket No. 6 is labeled "Motion for Relief from Judgment" and seeks to have this Court in this § 1983 case set aside his criminal judgment.  The viability of that claim is discussed separately below.

Considered apart from Docket No. 6, *Rooker-Feldman* bars the injunctive relief Hobbs seeks against Judge Tepe.  Plaintiff's Fifth Cause of Action complains at length of actions the Judge has taken to prevent further litigation of Hobbs' attempt to withdraw his guilty plea which Hobbs asserts violates his First and Fourteenth Amendment right of access to the courts.  (ECF No. 14, PageID 244-45.)  In his Prayer for Relief, Hobbs seeks:

> AN ORDER. the Plaintiff requests injunctive relief to prohibit the Judge from restricting access to criminal rules (Crim.R. 32.1) and restricting my access to the Court for redress, to rescind the illegal order requiring leave of the court to file a Crim.R. 32.1 motion, delaying the proceedings in court, to obey state law and stop intentionally botching up my criminal case by ignoring discovery violations and his over-riding interest in protecting the prosecutor, not considering brady material. perverting justice, and to stop presiding on the case when he is biased and stipulates he will automatically turn down any motion in the court, and to stop directing the Clerk to reject filings in my criminal case including Brady material and Crim.R. 32.l motions. Also the Judge must inquire into a potential discovery violation and impose sanctions.

*Id.* at PageID 247.  To paraphrase, Hobbs' wants this Court to order Judge Tepe to rescind his order requiring Hobbs to obtain leave of court for various filings.  While Hobbs does not use the word "appeal," it is disingenuous for him to claim that that is not what he is seeking – review by this Court of whatever Judge Tepe has done to carry out his vexatious litigator finding as to Hobbs. And that is precisely what *Rooker-Feldman* prohibits:  federal trial court interference with a state court order or judgment.

*Rooker-Feldman* bars Hobbs' claims against Judge Tepe seeking injunctive relief.

As part of his Memorandum Contra, Hobbs' asserts "Judge Tepe is not entitled to absolute immunity under § 1983" and then asserts he has sued Judge Tepe in his individual capacity. The Amended Complaint, however, plainly says Judge Tepe is sued in his official capacity. (ECF No. 14, PageID 232, ¶ 10.)

If Judge Tepe were being sued in his individual capacity, he would be absolutely immune. The common law absolute immunity of judges was first recognized in this country in *Bradley v. Fisher,* 80 U.S. 335, 355 (1872). It was explicitly extended to actions under 42 U.S.C. § 1983 in *Pierson v. Ray,* 386 U.S. 547 (1967), and *Stump v. Sparkman*, 435 U.S. 349 (1978). "The doctrine of judicial immunity exists 'not for the protection of a malicious or corrupt judge' but for 'the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequence.'" *King v. McCree,* 573 Fed. Appx. 430 (6th Cir. July 21, 2014), quoting *Pierson*, 386 U.S. at 554.

The immunity is lost only when judges act in the clear absence of all jurisdiction. *Pierson*, 386 U.S. at 362; *King v. Love*, 766 F.2d 962 (6th Cir. 1985); *Schorle v. City of Greenhills,* 524 F. Supp. 821, 828 (S.D. Ohio 1981). Only absence of subject matter jurisdiction vitiates immunity, not absence of personal jurisdiction. *Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000)(*en banc*).

Judge Tepe is a judge of the Common Pleas Court of Warren County which has jurisdiction in felony cases filed in that county, such as Hobbs'. If Hobbs believes Judge Tepe has improperly imposed vexatious litigator bans on him which he says do not apply in criminal cases, his remedy is by appeal to the Twelfth District Court of Appeals.

Accordingly, all claims against Judge Tepe should be dismissed with prejudice as barred by *Rooker-Feldman* or absolute judicial immunity.

**Motion for Relief from Judgment**

Six months after filing this action, Hobbs filed his Motion for Relief from Judgment (ECF No. 6). Whether that Motion is maintainable in this action may be decided on the face of the pleading. Hobbs makes it clear in the Motion that the judgment from which he wants relief is his criminal conviction in the Warren County Court of Common Pleas. He writes:

> Accordingly, pursuant to Fed. R. Civ. P. 60(b)(3), (b)(4), (b)(6), and (d)(3), Plaintiff is asserting extrinsic fraud, fraud on the court, misrepresentation, tampering with evidence, obstruction of justice, judicial interference, local government cover-up, conspiracy, and other misconduct by an adversary party. The trial Court judgment is void.

*Id.* at PageID 74. At various points in this litigation, Hobbs suggests that a favorable judgment on his Motion for Relief is the real goal of these proceedings. For example, in his Memorandum in Opposition to the Mason Defendants' Motion to Dismiss, he writes at the outset of his argument, "[i]n the alternative, the Court may stay the § 1983 proceedings until the Court fully litigates and vacates a void judgment for fraud upon the Court. (Doc. #6)." (ECF No. 24, PageID 279.) In his habeas corpus litigation as well, he sought to reopen the final judgment based on the same motion:

> Let me make my position clear to this Court, weather [sic] this Court (habeas) takes up my R.60 motion or the other assigned judges under the § 1983 claim, I will prove through briefs, discovery, and in accordance with the rules of civil procedure that a massive fraudulent scheme has been practice [sic] on this Court and the lower state Courts through 9 years and over the course of 16 judicial hearings, briefs, writs, motions, appeals, and even while I was in prison, the Prosecutors Office has broken several state and federal laws and went beyond there [sic] authority to get judgment in there [sic] favor through fraud and dishonesty and the Ohio Att'y General's Office <u>knew of this conduct.</u>

(Case No. 1:13-cv-928, ECF No. 28, PageID 652; emphasis sic).  Again in his Objections to Report and Recommendations in the habeas case, his first sentence out of twenty-one pages asserts "[t]his Court . . . has not addressed, read, or considered Doc. #6, 8, 11, 29 (pp.10-13) under *Hobbs v. Faulkner, et al.*, 1:17-cv-441."  *Id.* at ECF No. 30, PageID 660.

In the body of the Motion, Hobbs asserts that the underlying criminal conviction was obtained by prosecutorial fraud on the court, by representing that they had provided in discovery all that they were required to provide under *Brady, supra*.  They then allegedly protected the fruits of their fraud by defending the extent of the discovery in various subsequent proceedings in the trial and appellate courts of Ohio.

Hobbs claims to have "meticulously laid out and appropriately cited to the specific instances and relevant times, dates and locations in Plaintiff's original section 1983 complaint (Points 14-52)."  (ECF No. 6, PageID 78.)  Those paragraphs recite the results of public records requests made by Plaintiff from 2012 through 2017.  Plaintiff believes that the referenced documents are all *Brady* material and the prosecutors' failure to obtain and produce them in discovery constitutes fraud on the court, making his criminal conviction void.

The Court is unable to tell from the allegations in the original Complaint how many of the asserted *Brady* documents are actually possessed by Plaintiff and how many are known or suspected to exist, but have not been obtained Plaintiff.  (On July 27, 2018, Plaintiff filed over six hundred pages of documents under cover of a note to the Clerk simply claiming they constitute a "a complete criminal record."  However, the documents are not indexed as to how they relate to Plaintiff's claims and they are unauthenticated.  Documents filed outside the pleadings are not to be considered in determining a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

If we assume for the sake of argument that each and every item referenced in ¶¶ 14-52 of the Complaint constitutes *Brady* material, the question is whether proving that would entitle Plaintiff to have his criminal judgment set aside in this action.  The answer is "no" because none of the authority relied on by Hobbs authorizes a district court in a § 1983 action to vacate a state court criminal judgment.

Hobbs first relies on Fed. R. Civ. P. 60(b) which provides

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Hobbs relies on subsections (b)(3), (b)(4), and (b)(6).  **But those provisions only allow a court to grant relief from its own judgments, not the judgments of other courts.**  "The usual procedure [to obtain relief under Rule 60(b)] is by motion in the court and in the action in which the judgment was rendered."  Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d, §

19

2851.  The judgment from which Hobbs seeks relief is a criminal judgment of the Warren County Court of Common Pleas, not a judgment of this Court.

This interpretation is strengthened by the Supreme Court's holding in *Preiser v. Rodriquez*, 411 U.S. 475 (1973), that a district court may not grant habeas-like relief in a § 1983 action.  To allow that relief would frustrate the procedural requirements for habeas relief which are much more stringent now, after adoption of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), than they were in 1983 when *Preiser* was decided.

Hobbs also relies on Fed. R. Civ. P. 60(d) which provides:

> **(d) Other Powers to Grant Relief**. This rule does not limit a court's power to:
>
> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
>
> (2) grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action; or
>
> (3) set aside a judgment for fraud on the court.

Hobbs refers particularly to subsection (d)(3).  Hobbs has repeatedly referred to his Motion for Relief as an "independent action" under Rule 60(d).  Hobbs has not filed his Motion for Relief as an "independent action," but as a motion within this § 1983 case.

Wright, Miller & Kane comment on 60(d):  "This is not an affirmative grant of power but merely allows continuation of whatever power the court would have had to entertain an independent action had the rule not been adopted."  Federal Practice and Procedure, Civil 3d, § 2868.  Hobbs has not shown any authority prior to adoption of the Civil Rules which would have authorized a federal district court to vacate a state criminal judgment because the judgment had been procured by fraud.

The Sixth Circuit has recognized the use of an independent action under 60(d) in the habeas corpus context, but only with respect to a court's own judgment. *Mitchell v. Rees*, 651 F.3d 593 (6th Cir. 2012). If an "independent action" under Fed. R. Civ. P. 60(d) has any place in this case, it is only in Hobbs's habeas action, Case No. 1:13-cv-298.

To the extent Hobbs relies on his Motion for Relief from Judgment as stating a claim for relief in this case, it should be denied.


**Eleventh Amendment Bar to Jurisdiction**


The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

It was adopted to overrule the very unpopular decision in *Chisholm v. Georgia*, 2 Dall. 419 (1793). It has been construed to bar suits against a State by its own citizens. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Hans v. Louisiana*, 134 U.S. 1 (1890); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982). The Amendment also bars actions against state agencies where the State is the real party in interest and the action seeks to recover money from the state treasury. *Estate of Ritter v. University of Michigan,* 851 F.2d 846, 848 (6th Cir. 1988); *Ford Motor Company v. Dep't of Treasury of State of Indiana*, 323 U.S. 459 (1945); *Quern v. Jordan*, 440 U.S. 332 (1979).

Application of the Eleventh Amendment in a suit against a public agency turns on whether the agency can be characterized as an arm or alter ego of the State, or whether it should be treated

instead as a political subdivision of the State.  *Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 302 (6th Cir. 1984) *citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977).  This bar against suit also extends to state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167 (1985).  An Ohio common pleas court is not a segment of county government, but an arm of the State for purposes of § 1983 liability and the Eleventh Amendment.  *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997); continuing validity questioned in *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003).  The test is who would pay the judgment.  *Cash v. Hamilton County Dep't of Adult Prob.,* 388 F.3d 539 (6th Cir.2004).

The Amended Complaint does not purport to seek damages from Judge Tepe, but Hobbs has responded to a claim of absolute judicial immunity by asserting it does not apply to Judge Tepe.  On its face the Amended Complaint purports to sue Judge Tepe only in his official capacity. In that capacity he is immune from suit for damages under the Eleventh Amendment because he is an officer of the State.  There is an exception to Eleventh Amendment immunity for injunctive relief against state officials.  *Ex parte Young*, 209 U.S. 123 (1908); *Cory v. White*, 457 U.S. 85 (1982); *Thomson v. Harmony*, 65 F.3d 1314, 1320 (6th Cir. 1995).  However, the text of § 1983 itself provides, "in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  Hobbs has not pleaded any such declaratory decree.

**Statute of Limitations**

The Prosecutor and Telecom Defendants and Judge Tepe assert this action is barred by the statute of limitations (ECF No. 26).  Hobbs responds that the statute does not begin to run until a

plaintiff has discovered his claims for relief and all the claims he makes here are based on material fraudulently concealed by some or all of the Defendants.

A statute of limitations defense may be raised and decided on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) when it is apparent on the face of the complaint. *Pierce v. County of Oakland,* 652 F.2d 671 (6th Cir. 1981); *Lundblad v. Celeste*, 874 F.2d 1097 (6th Cir. 1989). The statute of limitations under Ohio law for actions brought pursuant to 42 U.S.C. § 1983 is two years. Ohio Revised Code § 2305.10. *Nadra v. Mbah*, 119 Ohio St. 3d 305 (2008); *Banks v. City of Whitehall*, 344 F.3d 550, 551 (6th Cir. 2003), *citing Browning v. Pendleton,* 869 F.2d 989 (6th Cir. 1989)(*en banc*). In Ohio, the statute of limitations for a § 1983 claim is two years and runs from "when the plaintiff knows or has reason to know of the injury which is the basis" of the claim. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003).

The Magistrate Judge concludes the statute of limitations defense cannot be adjudicated on the face of the Amended Complaint and must be reserved for later adjudication if the dismissal recommendation made below is not accepted. However, Plaintiff is advised that he cannot prevail in this case on any claim discovered before June 27, 2015, which would include materials he relied on for his Motions to Withdraw Guilty Pleas made in 2014, 2013, and 2014.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Amended Complaint herein be dismissed with prejudice and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

Because of the prolixity of Plaintiff's filings, it is hereby ORDERED that in any future filings in this case, references to the record be made to the specific docket entry and PageID number where the referenced matter is to be found.

September 4, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).

24

25